Reversed and Remanded and Opinion filed August 20, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01094-CV

____________

 

DEBORAH CHENAULT, F/K/A DEBORAH
PAUL,
Appellant

 

V.

 

PATRICIA BANKS, INDEPENDENT
EXECUTRIX FOR THE ESTATE OF HORACE A. PAUL, JR., DECEASED, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 1985-02332

 



 

O P I N I O N

Appellant Deborah Chenault, f/k/a Deborah
Paul, appeals the trial court=s order affirming child support arrearages
in her favor against appellee Patricia Banks, independent executrix for the
estate of Horace A. Paul, Jr., of $5,105, rather than the over $90,000 in
arrearages and interest she requested.  In five issues, she claims the trial
court abused its discretion in calculating arrearages and in failing to award
her interest.  We agree, and we reverse and remand. 








BACKGROUND

Chenault and Paul, who is now deceased,
were divorced on June 3, 1985.  Paul was ordered to pay Chenault $300 per month
in child support until their son turned eighteen, graduated from high school,
or was otherwise emancipated.  The decree was later modified to specify that
child support payments were to be made through the child support registry. 
This is the only modification the trial court ever made to the child support
obligation.

On November 6, 2006, Chenault filed a
petition under Family Code section 157.263 to enforce child support and confirm
arrearages against Patricia Banks, who is Paul=s sister and
executrix of his estate.  Chenault alleged that Paul had paid only $21,900 of
his $57,300 child support obligation, and therefore she sought to recover the
balance, plus interest, against his estate.  Banks disputed Chenault=s calculation and
brought forth evidence of additional payments to Chenault of child support and
other items for their son, as well as at least one loan to Chenault.  Banks
also submitted evidence that Paul had paid $18,176.31 directly to Marine
Military Academy (AMMA@), a private
boarding school that their son had attended for one year.

After a bench trial, the trial court
issued a letter to the parties stating that it found Paul=s total child
support obligation was $46,800 and that Paul had paid child support in the
amount of $41,695.36, which included $18,175.36 paid to MMA,[1]
for a total arrearages amount of $5,105.  Other than stating that the
$41,695.36 included money paid to MMA, the trial court did not explain how it
derived any of its calculations.  The trial court also did not specify an
amount of interest, stating Aany interest is calculable only by
computer and counsel are requested to make that calculation, or, agree to an
amount of interest.@  Less than a month later, the trial court
issued a judgment for child support arrearages that awarded Chenault $5,105 in
child support arrearages with no interest.  The judgment did not repeat the
other numbers that were included in the earlier letter.








                                                      ANALYSIS

A trial court=s decision to
grant or deny the relief requested in a motion for enforcement is reviewed for
an abuse of discretion.  See Beck v. Walker, 154 S.W.3d 895, 901 (Tex.
App.CDallas 2005, no
pet.); In re T.J.L., 97 S.W.3d 257, 265 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  When, as here, the trial court did not file findings of
fact and conclusions of law,[2]
we imply that the trial court made all findings necessary to support the
judgment and will uphold those findings if supported by sufficient evidence.  See
Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83B84 (Tex. 1992); Beck,
154 S.W.3d at 902.  Under the abuse of discretion standard, sufficiency of the
evidence is not an independent ground of error but rather is a relevant factor
in assessing whether the trial court abused its discretion.  Beck, 154
S.W.3d at 902; In re T.J.L., 97 S.W.3d at 265.








In calculating child support arrearages,
the trial court=s discretion is very limited.  See
Attorney Gen. v. Stevens, 84 S.W.3d 720, 723 (Tex. App.CHouston [1st
Dist.] 2002, no pet.).  Family Code section 157.262 states that a trial court Amay not reduce or
modify the amount of child support arrearages@ except as
specifically provided in the Family Code.  Tex.
Fam. Code Ann. ' 157.262(a) (Vernon 2008); see also
Beck, 154 S.W.3d at 903; Curtis v. Curtis, 11 S.W.3d 466, 471 (Tex.
App.CTyler 2000, no
pet.).  The trial court Aacts as a mere scrivener in mechanically
tallying up the amount of arrearage.@  Lewis v.
Lewis, 853 S.W.2d 850, 854 (Tex. App.CHouston [14th
Dist.] 1993, no writ) (internal quotation marks omitted); accord Beck,
154 S.W.3d at 903; In re M.C.R., 55 S.W.3d 104, 109 (Tex. App.CSan Antonio 2001,
no pet.).  Although the trial court can award certain offsets and credits, the
trial court has no discretion to forgive or decrease a past child support
obligation.  See Tex. Fam. Code
Ann. ' 157.262(a); George v. Jeppeson, 238 S.W.3d
463, 472 (Tex. App.CHouston [1st Dist.] 2007, no pet.); Beck,
154 S.W.3d at 903.  Thus, in a proceeding to confirm child support arrearages,
the trial court=s child support calculations must be based
on the payment evidence presented, not the trial court=s assessment of
what is fair or reasonable.  As with child support arrearages, the trial court
also has no discretion to modify, forgive, or make equitable adjustments in
awarding interest on child support arrearages.  See Herzfeld v. Herzfeld,
285 S.W.3d 122, 129 (Tex. App.CDallas 2009, no pet.); In re M.C.R.,
55 S.W.3d at 108B09.

A.  Arrearages

In issues one, three, four, and five,
Chenault complains that the trial court improperly calculated the amount of
child support arrearages.  She claims the trial court erred in giving child
support credit for the payments to MMA and in calculating the remaining
arrearages.

1.  Marine Military Academy

The evidence at trial showed that Chenault
agreed with Paul that their son could attend MMA for one year and that Paul
agreed to pay the entire cost.  Banks testified that Chenault and Paul further
agreed that Paul paying the cost of MMA would be considered child support, but
Chenault testified that she did not so agree and that she and Paul had never
discussed the issue.








Banks contends that because the trial
court did not make findings of fact, we cannot determine that the trial court
actually gave child support credit for the MMA payments.  Banks insists that we
cannot consider the trial court=s calculation in its prejudgment letter
because it is not an official fact finding and therefore not binding.  See
Cherokee Water Co. v. Gregg County Appraisal Dist., 801 S.W.2d 872, 878
(Tex. 1990).  It is questionable whether this doctrine applies here because the
letter stated a portion of the trial court=s formula that was
used in reaching a specific monetary conclusion, and that conclusion was
included in the final judgment.  Cf. Gulf States Utils. Co. v. Low, 79
S.W.3d 561, 565 (Tex. 2002) (AThe court=s post-verdict
letter ruling does not illuminate the question because it was interlocutory and
its terms were never incorporated in the final judgment.@); Cherokee
Water Co., 801 S.W.2d at 878 (finding that trial court letter to parties
was not competent evidence of the basis for judgment in part because A[t]he court could
have disregarded the [improper evidence mentioned in the letter] at the time
judgment was actually signed@).  In any event, we need not determine
whether we can properly rely on the portion of the letter discussing MMA (or
any other portion of the letter) because our conclusion is the same either
way.  The trial court does not abuse its discretion if it reaches the right
result, even for the wrong reason.  In re Vogel, 261 S.W.3d 917, 920
(Tex. App.CHouston [14th Dist.] 2008, orig. proceeding).  Thus,
we will review whether the trial court=s judgment is
proper under a scenario in which it awarded credit for MMA and under a scenario
in which it did not.








We conclude that to the extent it gave a
child support credit for the amount paid to MMA, the trial court abused its
discretion.  The trial court plays an integral role in child support
proceedings to ensure the protection of the child=s best interests. 
See Williams v. Patton, 821 S.W.2d 141, 143B44 (Tex. 1991); London
v. London, 192 S.W.3d 6, 15 n.4 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied).  Private agreements to modify child support
obligations bypass this protection and are thus against public policy and
unenforceable.  See Williams, 821 S.W.2d at 143B44; Sudan v.
Sudan, 145 S.W.3d 280, 285 (Tex. App.CHouston [14th
Dist.] 2004), rev=d on other grounds, 199 S.W.3d 291
(Tex. 2006); State v. Borchers, 805 S.W.2d 880, 882 (Tex. App.CSan Antonio 1991,
writ denied).  A final judgment containing a child support order remains in
effect until modified by the court.  See Gonzalez v. Tippit, 167 S.W.3d
536, 542 (Tex. App.CAustin 2005, no pet.); In re D.S.,
76 S.W.3d 512, 517 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
Thus, if the parties agree to modify child support, they must take their
agreement to the trial court, who will makes orders as necessary to ensure that
the child support obligations continue to serve the best interests of the
child.  See Williams, 821 S.W.2d at 143B44; Kurtz v.
Kurtz, 158 S.W.3d 12, 20 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied); Sudan, 145 S.W.3d at 285.  It is undisputed
that neither Chenault nor Paul asked the trial court to modify the child
support obligations to allow Paul=s payments to MMA
to constitute child support.  Thus, even if the trial court could have found,
based on Banks=s testimony, that Chenault and Paul agreed that Paul=s payments to MMA
would constitute child support, such an agreement is unenforceable and not a
proper basis for reducing child support arrearages.

Banks argues that, independent of the
enforceability of the alleged agreement, child support credit for the MMA
payments is supportable based on the affirmative defense of voluntary
relinquishment.  The Family Code provides that A[a]n obligor may
plead as an affirmative defense in whole or in part to a motion for enforcement
of child support that the obligee voluntarily relinquished to the obligor
actual possession and control of a child.@  Tex. Fam. Code Ann. ' 157.008(a)
(Vernon 2008).  Because voluntary relinquishment is an affirmative defense, the
obligor has the burden of proof.  Beck, 154 S.W.3d at 903.  If the
obligor proves the voluntary relinquishment defense, he is entitled to either
an offset or reimbursement of his child support obligation, depending on
whether he continued to pay child support during the period of voluntary
relinquishment.  See In re A.M., 192 S.W.3d 570, 574 (Tex. 2006).

Banks argues that because Paul paid for
MMA, the trial court could have found that Chenault voluntarily relinquished
actual possession and control of her son to Paul by allowing him to attend
MMA.  We reject this argument.  The obligor must prove that the obligee
affirmatively agreed to relinquish possession and control of the child to the
obligor.  See Tex. Fam. Code Ann.
' 157.008(a);
Leighton v. Court, 773 S.W.2d 63, 64 (Tex. App.CHouston [14th
Dist.] 1989, no writ); Norman v. Norman, 683 S.W.2d 548, 550 (Tex. App.CFort Worth), rev=d on other grounds, 692 S.W.2d 655
(Tex. 1985).  There is no evidence in the record to show that Chenault actually
agreed to relinquish possession and control over her son to Paul simply by
agreeing to allow him to attend boarding school.  Without such evidence, any
implied finding by the trial court to the contrary would not be supported by
sufficient evidence.

For these reasons, we conclude the trial
court abused its discretion to the extent it credited Paul=s payments to MMA
toward his child support obligations.








2.  Other Arrearages Calculations

Based on the uncontested evidence and the
terms of the divorce decree, Paul was obligated to pay child support from July
1, 1985 to May 1, 2001, which is 191 months, at $300 per month, for a total
child support obligation of $57,300.  If the trial court gave a credit of
$18,176.31 for the MMA payments, then considering its total arrearage judgment
of $5,105, we imply that the trial court gave Paul another $34,018.69 in credit
toward his child support obligation.  If the trial court did not credit the MMA
payments as child support, we imply the trial court gave Paul $52,195 in child
support credits.

Chenault argues that the trial court
abused its discretion because the evidence is insufficient to support the trial
court=s ultimate
conclusion that Paul owed only $5,105 in child support arrearages.  Banks
argues that because the evidence regarding child support payments was disputed
and the amount the trial court found was within the range of the figures argued
by the parties, the trial court acted within its discretion.  We disagree with
Banks=s analysis.








Banks presented evidence of every payment
from Paul to Chenault she could document, including not only child support but
personal loans and money for other items such as Christmas gifts, an amusement
park season pass, pictures, insurance, a car, and a class ring.  We do not know
exactly how the trial court calculated the child support credits it gave.  If
the trial court gave credit for these non-child support items, that would
constitute an abuse of discretion because these items are not provided in the
Family Code as a basis for decreasing child support arrearages.  See Tex. Fam. Code Ann. ' 157.262(a); Medrano
v. Medrano, 810 S.W.2d 426, 427 (Tex. App.CSan Antonio 1991,
no writ) (noting that the Family Code does not authorize credit against child
support arrearages for a loan or purchase of a car).  Whether we deduct these
non-child support items from the total or credit every payment presented, there
is no combination of the figures presented that amounts to either $34,018.69
(with credit for the MMA payments) or $52,195 (without credit for the MMA
payments) in child support credits.  Paul=s child support
obligation was $300 per month, and there is no evidence of a partial payment or
any other type of payment that could possibly result in child support credits
of $34,018.69 or $52,195, neither of which are multiples of the $300 owed each
month.[3] 
Simply put, we cannot find any way, based on the evidence presented, to support
the trial court=s child support arrearages calculation. 
Thus, the trial court failed in its duty as a scrivener and abused its very
limited discretion in its determination of child support arrearages. 

Having concluded that the trial court
abused its discretion in its calculation of child support arrearages, we
sustain Chenault=s first, third, fourth, and fifth issues.

B.  Interest

In her second issue, Chenault complains
that the trial court abused its discretion in failing to award interest on her
child support arrearages judgment.  The Family Code provides that if a motion
for enforcement of child support requests a money judgment for arrearages, the
court Ashall confirm the
amount of arrearages and render one cumulative money judgment@ that includes Ainterest on the
arrearages.@  Tex. Fam. Code
Ann. ' 157.263(a), (b)(3) (Vernon 2008).  The interest rate
on each unpaid month of child support is either six or twelve percent,
depending on the date of the unpaid payments and the date the unpaid support
payments are judicially confirmed.  See id. ' 157.265; In re
M.C.C., 187 S.W.3d 383, 385 (Tex. 2006).  Awarding interest on child
support arrearages is mandatory, and the trial court has no discretion to not
award the full amount of interest due.  See Herzfeld, 285 S.W.3d at 129;
In re M.C.R., 55 S.W.3d at 108B09.








The trial judge explained during the
hearing on the motion for entry of judgment that AI think [interest
is] uncertain . . . . and incapable of calculation due to the facts of the
case.@  However,
interest on child support arrearages is inherently calculable because an
arrearages determination must be based on specific unfulfilled child support
obligations.  Determining the date and amount of the unpaid obligation is
necessary to calculate both the arrearage and the interest.  In its prejudgment
letter, the trial court requested that the parties calculate the interest total
but did not give them the necessary information to do so.  Though the trial
court was not required to provide findings of fact because Chenault=s request was not
timely, her failure to do so did not forfeit her right to interest.  The trial
court had no discretion not to award interest, even without a timely request
for findings of fact.  See Herzfeld, 285 S.W.3d at 129; In re M.C.R.,
55 S.W.3d at 108B09.  We sustain Chenault=s second issue.

                                                   CONCLUSION

The trial court abused its discretion in
making its child support arrearages calculation and in failing to perform its
mandatory duty of awarding interest on confirmed child support arrearages.  We
reverse the trial court=s judgment and remand for further
proceedings consistent with this opinion.

 

 

 

 

 

/s/      Leslie
B. Yates

Justice

 

 

 

Panel consists of Justices Yates,
Guzman, and Sullivan.









[1]  These findings are at odds with the undisputed
evidence showing a total child support obligation of $57,300 (not $46,800) and
payments to MMA of $18,176.31 (not $18,175.36).





[2]  Chenault filed a request that the trial court make findings of fact and
conclusions of law, but she failed to file a timely notice of overdue findings
of facts and conclusions of law, and thus the trial court was not required to
make them.  See Tex. R. Civ. P. 296B299.





[3]  These figures are based on the evidence presented,
rather than the calculations in the trial court=s prejudgment letter to the parties.  Considering the figures in the
letter does not change our analysis because the letter contains an undisputably
incorrect total child support obligation, the amount credited for payments to
MMA does not match the undisputed evidence of payments made, and the amount of
other child support credited also cannot be derived from any combination of the
figures and testimony presented.