Deborah CHENAULT, f/k/a Deborah Paul, Appellant

v.

Patricia BANKS, Independent Executrix for the Estate of Horace A. Paul, Jr., Deceased, Appellee.

No. 14-07-01094-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 20, 2009.

Daniel Lad Sanders, Jack M. Terry III, Houston, TX, for appellants.

Daniel Jake Lemkuill, Mark S. Grantom, Houston, TX, for appellees.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## OPINION

LESLIE B. YATES, Justice.

Appellant Deborah Chenault, f/k/a Deborah Paul, appeals the trial court's order affirming child support arrearages in her favor against appellee Patricia Banks, independent executrix for the estate of Horace A. Paul, Jr., of $5,105, rather than the over $90,000 in arrearages and interest she requested. In five issues, she claims the trial court abused its discretion in calculating arrearages and in failing to award her interest. We agree, and we reverse and remand.

## BACKGROUND

Chenault and Paul, who is now deceased, were divorced on June 3, 1985. Paul was ordered to pay Chenault $300 per month in child support until their son turned eighteen, graduated from high school, or was otherwise emancipated. The decree was later modified to specify that child support payments were to be made through the child support registry. This is the only modification the trial court ever made to the child support obligation.

On November 6, 2006, Chenault filed a petition under Family Code section 157.263 to enforce child support and confirm arrearages against Patricia Banks, who is Paul's sister and executrix of his estate. Chenault alleged that Paul had paid only $21,900 of his $57,300 child support obligation, and therefore she sought to recover the balance, plus interest, against his estate. Banks disputed Che-

nault's calculation and brought forth evidence of additional payments to Chenault of child support and other items for their son, as well as at least one loan to Chenault. Banks also submitted evidence that Paul had paid $18,176.31 directly to Marine Military Academy ("MMA"), a private boarding school that their son had attended for one year.

After a bench trial, the trial court issued a letter to the parties stating that it found Paul's total child support obligation was $46,800 and that Paul had paid child support in the amount of $41,695.36, which included $18,175.36 paid to MMA,[1] for a total arrearages amount of $5,105. Other than stating that the $41,695.36 included money paid to MMA, the trial court did not explain how it derived any of its calculations. The trial court also did not specify an amount of interest, stating "any interest is calculable only by computer and counsel are requested to make that calculation, or, agree to an amount of interest." Less than a month later, the trial court issued a judgment for child support arrearages that awarded Chenault $5,105 in child support arrearages with no interest. The judgment did not repeat the other numbers that were included in the earlier letter.

## ANALYSIS

A trial court's decision to grant or deny the relief requested in a motion for enforcement is reviewed for an abuse of discretion. *See Beck v. Walker*, 154 S.W.3d 895, 901 (Tex.App.-Dallas 2005, no pet.); *In re T.J.L.*, 97 S.W.3d 257, 265 (Tex.App.-Houston [14th Dist.] 2002, no

pet.). When, as here, the trial court did not file findings of fact and conclusions of law,[2] we imply that the trial court made all findings necessary to support the judgment and will uphold those findings if supported by sufficient evidence. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83–84 (Tex.1992); *Beck*, 154 S.W.3d at 902. Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error but rather is a relevant factor in assessing whether the trial court abused its discretion. *Beck*, 154 S.W.3d at 902; *In re T.J.L.*, 97 S.W.3d at 266.

In calculating child support arrearages, the trial court's discretion is very limited. *See Attorney Gen. v. Stevens*, 84 S.W.3d 720, 723 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Family Code section 157.262 states that a trial court "may not reduce or modify the amount of child support arrearages" except as specifically provided in the Family Code. TEX. FAM.CODE ANN. § 157.262(a) (Vernon 2008); *see also Beck*, 154 S.W.3d at 903; *Curtis v. Curtis*, 11 S.W.3d 466, 471 (Tex.App.-Tyler 2000, no pet.). The trial court "acts as a mere scrivener in mechanically tallying up the amount of arrearage." *Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex.App.-Houston [14th Dist.] 1993, no writ) (internal quotation marks omitted); *accord Beck*, 154 S.W.3d at 903; *In re M.C.R.*, 55 S.W.3d 104, 109 (Tex.App.-San Antonio 2001, no pet.). Although the trial court can award certain offsets and credits, the trial court has no discretion to forgive or decrease a past child support obligation. *See* TEX. FAM.CODE ANN. § 157.262(a); *George v.*

---

1. These findings are at odds with the undisputed evidence showing a total child support obligation of $57,300 (not $46,800) and payments to MMA of $18,176.31 (not $18,175.36).

2. Chenault filed a request that the trial court make findings of fact and conclusions of law, but she failed to file a timely notice of overdue findings of facts and conclusions of law, and thus the trial court was not required to make them. *See* TEX.R. CIV. P. 296–299.

*Jeppeson,* 238 S.W.3d 463, 472 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Beck,* 154 S.W.3d at 903. Thus, in a proceeding to confirm child support arrearages, the trial court's child support calculations must be based on the payment evidence presented, not the trial court's assessment of what is fair or reasonable. As with child support arrearages, the trial court also has no discretion to modify, forgive, or make equitable adjustments in awarding interest on child support arrearages. *See Herzfeld v. Herzfeld,* 285 S.W.3d 122, 129 (Tex.App.-Dallas 2009, no pet.); *In re M.C.R.,* 55 S.W.3d at 108–09.

## A. Arrearages

In issues one, three, four, and five, Chenault complains that the trial court improperly calculated the amount of child support arrearages. She claims the trial court erred in giving child support credit for the payments to MMA and in calculating the remaining arrearages.

### 1. Marine Military Academy

█ The evidence at trial showed that Chenault agreed with Paul that their son could attend MMA for one year and that Paul agreed to pay the entire cost. Banks testified that Chenault and Paul further agreed that Paul paying the cost of MMA would be considered child support, but Chenault testified that she did not so agree and that she and Paul had never discussed the issue.

█ Banks contends that because the trial court did not make findings of fact, we cannot determine that the trial court actually gave child support credit for the MMA payments. Banks insists that we cannot consider the trial court's calculation in its prejudgment letter because it is not an official fact finding and therefore not binding. *See Cherokee Water Co. v. Gregg County Appraisal Dist.,* 801 S.W.2d 872,

878 (Tex.1990). It is questionable whether this doctrine applies here because the letter stated a portion of the trial court's formula that was used in reaching a specific monetary conclusion, and that conclusion was included in the final judgment. *Cf. Gulf States Utils. Co. v. Low,* 79 S.W.3d 561, 565 (Tex.2002) ("The court's post-verdict letter ruling does not illuminate the question because it was interlocutory and its terms were never incorporated in the final judgment."); *Cherokee Water Co.,* 801 S.W.2d at 878 (finding that trial court letter to parties was not competent evidence of the basis for judgment in part because "[t]he court could have disregarded the [improper evidence mentioned in the letter] at the time judgment was actually signed"). In any event, we need not determine whether we can properly rely on the portion of the letter discussing MMA (or any other portion of the letter) because our conclusion is the same either way. The trial court does not abuse its discretion if it reaches the right result, even for the wrong reason. *In re Vogel,* 261 S.W.3d 917, 920 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). Thus, we will review whether the trial court's judgment is proper under a scenario in which it awarded credit for MMA and under a scenario in which it did not.

█ We conclude that to the extent it gave a child support credit for the amount paid to MMA, the trial court abused its discretion. The trial court plays an integral role in child support proceedings to ensure the protection of the child's best interests. *See Williams v. Patton,* 821 S.W.2d 141, 143–44 (Tex.1991); *London v. London,* 192 S.W.3d 6, 15 n. 4 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Private agreements to modify child support obligations bypass this protection and are thus against public policy and unenforceable. *See Williams,* 821

S.W.2d at 143–44; *Sudan v. Sudan*, 145 S.W.3d 280, 285 (Tex.App.-Houston [14th Dist.] 2004), *rev'd on other grounds*, 199 S.W.3d 291 (Tex.2006); *State v. Borchers*, 805 S.W.2d 880, 882 (Tex.App.-San Antonio 1991, writ denied). A final judgment containing a child support order remains in effect until modified by the court. *See Gonzalez v. Tippit*, 167 S.W.3d 536, 542 (Tex.App.-Austin 2005, no pet.); *In re D.S.*, 76 S.W.3d 512, 517 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Thus, if the parties agree to modify child support, they must take their agreement to the trial court, who will make orders as necessary to ensure that the child support obligations continue to serve the best interests of the child. *See Williams*, 821 S.W.2d at 143–44; *Kurtz v. Kurtz*, 158 S.W.3d 12, 20 (Tex.App.-Houston [14th Dist.] 2004, pet. denied); *Sudan*, 145 S.W.3d at 285. It is undisputed that neither Chenault nor Paul asked the trial court to modify the child support obligations to allow Paul's payments to MMA to constitute child support. Thus, even if the trial court could have found, based on Banks's testimony, that Chenault and Paul agreed that Paul's payments to MMA would constitute child support, such an agreement is unenforceable and not a proper basis for reducing child support arrearages.

 Banks argues that, independent of the enforceability of the alleged agreement, child support credit for the MMA payments is supportable based on the affirmative defense of voluntary relinquishment. The Family Code provides that "[a]n obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child." TEX. FAM.CODE ANN. § 157.008(a) (Vernon 2008). Because voluntary relinquishment is an affirmative defense, the obligor has

the burden of proof. *Beck*, 154 S.W.3d at 903. If the obligor proves the voluntary relinquishment defense, he is entitled to either an offset or reimbursement of his child support obligation, depending on whether he continued to pay child support during the period of voluntary relinquishment. *See In re A.M.*, 192 S.W.3d 570, 574 (Tex.2006).

Banks argues that because Paul paid for MMA, the trial court could have found that Chenault voluntarily relinquished actual possession and control of her son to Paul by allowing him to attend MMA. We reject this argument. The obligor must prove that the obligee affirmatively agreed to relinquish possession and control of the child to the obligor. *See* TEX. FAM.CODE ANN. § 157.008(a); *Leighton v. Court*, 773 S.W.2d 63, 64 (Tex.App.-Houston [14th Dist.] 1989, no writ); *Norman v. Norman*, 683 S.W.2d 548, 550 (Tex.App.-Fort Worth), *rev'd on other grounds*, 692 S.W.2d 655 (Tex.1985). There is no evidence in the record to show that Chenault actually agreed to relinquish possession and control over her son to Paul simply by agreeing to allow him to attend boarding school. Without such evidence, any implied finding by the trial court to the contrary would not be supported by sufficient evidence.

For these reasons, we conclude the trial court abused its discretion to the extent it credited Paul's payments to MMA toward his child support obligations.

## 2. Other Arrearages Calculations

 Based on the uncontested evidence and the terms of the divorce decree, Paul was obligated to pay child support from July 1, 1985 to May 1, 2001, which is 191 months, at $300 per month, for a total child support obligation of $57,300. If the trial court gave a credit of $18,176.31 for the MMA payments, then considering its total arrearage judgment of $5,105, we im-

ply that the trial court gave Paul another $34,018.69 in credit toward his child support obligation. If the trial court did not credit the MMA payments as child support, we imply the trial court gave Paul $52,195 in child support credits.

Chenault argues that the trial court abused its discretion because the evidence is insufficient to support the trial court's ultimate conclusion that Paul owed only $5,105 in child support arrearages. Banks argues that because the evidence regarding child support payments was disputed and the amount the trial court found was within the range of the figures argued by the parties, the trial court acted within its discretion. We disagree with Banks's analysis.

Banks presented evidence of every payment from Paul to Chenault she could document, including not only child support but personal loans and money for other items such as Christmas gifts, an amusement park season pass, pictures, insurance, a car, and a class ring. We do not know exactly how the trial court calculated the child support credits it gave. If the trial court gave credit for these non-child support items, that would constitute an abuse of discretion because these items are not provided in the Family Code as a basis for decreasing child support arrearages. *See* Tex. Fam.Code Ann. § 157.262(a); *Medrano v. Medrano,* 810 S.W.2d 426, 427 (Tex.App.-San Antonio 1991, no writ) (noting that the Family Code does not authorize credit against child support arrearages for a loan or purchase of a car). Whether we deduct these non-child support items from the total or credit every payment presented, there is no combination of the figures presented that amounts to either $34,018.69 (with credit for the MMA payments) or $52,195 (without credit for the MMA payments) in child support credits. Paul's child support obligation was $300 per month, and there is no evidence of a partial payment or any other type of payment that could possibly result in child support credits of $34,018.69 or $52,195, neither of which are multiples of the $300 owed each month.[3] Simply put, we cannot find any way, based on the evidence presented, to support the trial court's child support arrearages calculation. Thus, the trial court failed in its duty as a scrivener and abused its very limited discretion in its determination of child support arrearages.

Having concluded that the trial court abused its discretion in its calculation of child support arrearages, we sustain Chenault's first, third, fourth, and fifth issues.

### B. Interest

 In her second issue, Chenault complains that the trial court abused its discretion in failing to award interest on her child support arrearages judgment. The Family Code provides that if a motion for enforcement of child support requests a money judgment for arrearages, the court "shall confirm the amount of arrearages and render one cumulative money judgment" that includes "interest on the arrearages." Tex. Fam.Code Ann. § 157.263(a), (b)(3) (Vernon 2008). The interest rate on each unpaid month of child support is either six or twelve percent, depending on the date of the unpaid payments and the date the unpaid support payments are judicially confirmed. *See id.*

---

**3.** These figures are based on the evidence presented, rather than the calculations in the trial court's prejudgment letter to the parties. Considering the figures in the letter does not change our analysis because the letter contains an undisputably incorrect total child support obligation, the amount credited for payments to MMA does not match the undisputed evidence of payments made, and the amount of other child support credited also cannot be derived from any combination of the figures and testimony presented.

§ 157.265; *In re M.C.C.*, 187 S.W.3d 383, 385 (Tex.2006). Awarding interest on child support arrearages is mandatory, and the trial court has no discretion to not award the full amount of interest due. *See Herzfeld*, 285 S.W.3d at 129; *In re M.C.R.*, 55 S.W.3d at 108–09.

The trial judge explained during the hearing on the motion for entry of judgment that "I think [interest is] uncertain .... and incapable of calculation due to the facts of the case." However, interest on child support arrearages is inherently calculable because an arrearages determination must be based on specific unfulfilled child support obligations. Determining the date and amount of the unpaid obligation is necessary to calculate both the arrearage and the interest. . In its pre-judgment letter, the trial court requested that the parties calculate the interest total but did not give them the necessary information to do so. Though the trial court was not required to provide findings of fact because Chenault's request was not timely, her failure to do so did not forfeit her right to interest. The trial court had no discretion not to award interest, even without a timely request for findings of fact. *See Herzfeld*, 285 S.W.3d at 129; *In re M.C.R.*, 55 S.W.3d at 108–09. We sustain Chenault's second issue.

## CONCLUSION

The trial court abused its discretion in making its child support arrearages calculation and in failing to perform its mandatory duty of awarding interest on confirmed child support arrearages. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.