**Affirmed in Part as Modified, Reversed and Remanded in Part, and Memorandum Opinion filed September 30, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00583-CV

---

### DEAN SMITH, Appellant

### V.

### MICHELLE ANN SMITH, Appellee

---

**On Appeal from the 257th District Court
Harris County, Texas
Trial Court Cause No. 2009-33707**

---

## MEMORANDUM OPINION

Dean Smith appeals the trial court's enforcement order holding that he committed certain violations of the trial court's final decree of divorce and ordering him to pay certain amounts to his ex-wife Michelle Ann Lutz (formerly Smith), some as child support arrearages, as well as attorney's fees. In this appeal, Smith specifically challenges the trial court's orders pertaining to unreimbursed medical expenses and insurance premiums and related attorney's fees.

We conclude that the trial court erred in awarding Lutz amounts for unreimbursed insurance premiums but properly awarded her amounts for unreimbursed medical expenses. Accordingly, we reverse the portion of the trial court's enforcement order concerning the unreimbursed insurance premiums and order that Lutz take nothing on those claims, reverse and remand the award of attorney's fees for a new determination of the proper amount of fees to be awarded, and affirm the remainder of the enforcement order.

## *Background*

Lutz and Smith were divorced on April 26, 2010 with the entry of an agreed final decree. They have three children together. Among numerous provisions in the decree, Smith was ordered to refinance the mortgage on the marital residence and pay the couple's federal income tax liabilities from the beginning of the marriage through 2008. As will be discussed in more detail below, the decree also required Smith to pay daycare expenses for the children but also effectively provided for the conversion of that obligation into the obligation to pay half of the cost for health insurance for the children, which Lutz was required to provide. The decree also ordered each party to pay half of the children's uninsured medical expenses and included provisions regarding proof of any amounts paid. Both parties were enjoined from allowing any person with whom they had an intimate or dating relationship to be in the home or in the presence of the children between certain hours while they had possession of the children.

In 2014, Lutz filed both a motion to enforce and a petition to modify the final decree. In her third amended motion for enforcement, the live enforcement pleading at the time of trial, Lutz alleged Smith had failed to refinance the mortgage; pay the IRS debt, which had resulted in the seizure of Lutz's tax refund; comply with the so-called morality clause; or reimburse half of healthcare

coverage costs or uninsured healthcare expenses. Lutz also alleged Smith failed to reimburse her for private school tuition, which appears to relate to a separate agreement between the parties and not be a part of the final decree, and she requested attorney's fees.

The parties began mediating issues raised in the petition to modify in 2016 and ultimately signed a mediated settlement agreement (MSA), which was filed with the trial court on October 18, 2017. Among the terms of the MSA, it appears that the parties agreed Lutz would provide health insurance for the children and Smith would reimburse her for 50 percent of the actual cost beginning October 1, 2016. A dispute then arose regarding the MSA terms, and the parties sought arbitration of those issues. The MSA therefore had not been incorporated into a court order by the time of trial in the enforcement action.

Meanwhile, trial commenced on the enforcement action on April 12, 2018. Lutz testified and presented evidence concerning the expenses she was seeking to recover. The sufficiency of that evidence is a key issue in this appeal and will be discussed in more detail below. The MSA was not offered or admitted into evidence as an exhibit but was briefly mentioned during trial.

Among other holdings in its enforcement order, signed June 1, 2018, the trial court found that (1) Smith owed Lutz $5,976 for the seizure of her tax refunds; (2) the MSA clarified the parties' existing agreement regarding Smith's obligation to pay health insurance premiums, and his obligation through April 1, 2018 amounted to $8,704, payable as child support; (3) Smith's obligation to pay uninsured healthcare expenses amounted to $3,779.94, also payable as child support; and (4) Lutz incurred $7,500 in attorney's fees on the child support matters and $1,000 on the property issue. The court then awarded Lutz judgment for all stated amounts but denied all requested relief not expressly granted.

3

*Discussion*

In five issues, Smith contends that (1) the trial court impermissibly modified the child support provisions in the decree without proper pleadings on file and in an order that did not contain required information, (2) the evidence was legally and factually insufficient to support the enforcement order, (3) the court exceeded its authority in modifying the decree beyond permissible clarification parameters, (4) the court abused its discretion in enforcing provisions of an MSA that had not been incorporated into a court order, and (5) the award in the enforcement order was clearly wrong and manifestly unjust. Under several of these issues, Smith raises arguments pertinent to the award of medical expenses, the award of insurance premiums, and the attorney's fees award. In the interest of clarity, we will organize our discussion based on the specific awards and will address each of Smith's issues within that organization. We will begin with the medical expenses.

## I. Medical Expenses

In regard to the medical expenses, Smith argues that (1) Lutz's pleadings were deficient, (2) the trial court's enforcement order was deficient, and (3) the evidence was legally and factually insufficient to support the award. We will address each set of arguments in turn. We review the trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse of discretion standard. *Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## A. Lutz's Pleadings

Smith first asserts that Lutz's pleadings for medical expenses were deficient because they did not state the provisions of the decree that Smith violated, the

amounts due, or the dates of any contempt.[1] The only authority Smith cites in support of his argument is Texas Family Code section 157.002, which provides in relevant part:

> (a) A motion for enforcement must, in ordinary and concise language:
>
>> (1) identify the provision of the order allegedly violated and sought to be enforced;
>>
>> (2) state the manner of the respondent's alleged noncompliance;
>>
>> (3) state the relief requested by the movant; and
>>
>> (4) contain the signature of the movant or the movant's attorney.
>
> (b) A motion for enforcement of child support:
>
>> (1) must include the amount owed as provided in the order, the amount paid, and the amount of arrearages;
>>
>> (2) if contempt is requested, must include the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid, if any . . . .

Tex. Fam. Code § 157.002.

In her motion for enforcement, Lutz set out the relevant language of the decree regarding medical expenses and states that Smith failed to pay his half of the health care expenses Lutz had incurred on behalf of the children. She then lists the "outstanding expenses," supplying the provider's name, the amount incurred, and the date of the statement for each of 47 different medical expenses. She requests that the court order Smith to pay 50 percent of the expenses incurred and

---

[1] Because Smith combined many of his arguments regarding both the medical expenses and the insurance premiums, it can be difficult to tell whether he intended an argument to address both types of claims. Nevertheless, we will endeavor to address all pertinent arguments regarding both sets of claims.

5

notes that the statements were provided to Smith.

It is not entirely clear from his brief whether Smith intended to argue that the motion did not identify the provision of the order allegedly violated by failing to pay his share of medical expenses, as required by section 157.002, or whether this argument was just aimed at the health insurance premiums claims. Regardless, Lutz's motion clearly sets out the relevant language from the decree.

Smith next complains that the motion did not state the amount he owed. The statement did, however, state the amounts Lutz incurred and asserted Smith owed half. All Smith had to do to know the amount of the alleged arrearages was divide by two. Smith does not cite any authority or offer any explanation as to why more than this was required. *See* Tex. R. App. P. 38.1(i) (requiring that appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

Lastly, Smith complains that Lutz failed to "include any dates of alleged contempt." But Lutz did not seek contempt in her motion, so there were no dates of alleged contempt to provide. Smith's arguments regarding the sufficiency of Lutz's motion are without merit.

### B. The Enforcement Order

Smith next asserts that the trial court's enforcement order was deficient in regards to the medical expenses because it does not identify (1) the provisions in the decree Smith violated, (2) the acts or omissions that were the subject of the order, (3) the expenses for which he was being held liable, or (4) the dates by which he should have paid. Once again, the only authority Smith cites in support of his arguments is a section of the Family Code, in this instance, section 157.002(a), which provides:

6

(a) An enforcement order must include:

> (1) in ordinary and concise language the provisions of the order for which enforcement was requested;
>
> (2) the acts or omissions that are the subject of the order;
>
> (3) the manner of the respondent's noncompliance; and
>
> (4) the relief granted by the court.

Tex. Fam. Code § 157.002(a).

In its enforcement order, the trial court indicated that the amount Smith owed on his obligation to pay 50 percent of uninsured health care expenses and of which he received notice was $3,779.94. Arguably, the court's language identified the provision of the order for which enforcement was requested (his obligation to pay 50 percent of incurred medical expenses), the omissions made the subject of the order (his failure to pay half the amount incurred), the manner of his noncompliance (a failure to pay), and the relief granted (judgment for $3,779.94 assessed as child support). Smith does not cite any authority or make cogent argument that more was required. *See* Tex. R. App. P. 38.1(i).

To the extent Smith argues that section 157.002(a) required that the order specify each bill or each expense for which he failed to pay half and the date he should have made the payment, he offers no cite to where he may have preserved this argument by making it below. Although Smith filed a motion to modify the trial court's enforcement order and the trial court held a hearing on that motion, Smith does not appear to have raised these complaints either in the motion or during the hearing. Accordingly, he has waived such arguments. *See* Tex. R. App. P. 33.1(a) (providing that to preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion); *Ogle v. Hector*, No. 03-16-00716-CV, 2017 WL 3379107, at *5 (Tex. App.—Austin Aug.

7

2, 2017, pet. denied) (mem. op.) (holding failure to object to deficiencies in order waived any error). Moreover, Smith did not request findings of fact and conclusions of law that could have provided the information in question. Accordingly, Smith's arguments regarding the sufficiency of the enforcement order as it pertains to the medical expenses are without merit.

### C. Sufficiency of the Evidence

Lastly, Smith challenges the sufficiency of the evidence to support the trial court's award of $3,779.94 for unreimbursed medical expenses. Under the abuse of discretion standard, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). When, as here, the trial court did not file findings of fact and conclusions of law, we imply all findings necessary to support the judgment and will uphold those findings if sufficient evidence supports them. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.). However, to the extent the trial court included fact findings in its judgment, as required by statute or otherwise, we will consider these findings as they do not conflict with findings in a separate document. *See Isaac v. Burnside*, 616 S.W.3d 609, 614 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error but rather is a relevant factor in assessing whether the trial court abused its discretion. *Woody*, 429 S.W.3d at 797. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a

8

reasonable factfinder could not. *Id.* at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id.*

In reviewing a factual sufficiency challenge, we consider all the evidence in a neutral light and consider whether the evidence that supports the challenged finding is so weak as to make the court's holding clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The divorce decree generally made each party responsible for half of all medical expenses that were not paid by insurance. Because Smith's sufficiency arguments depend largely on the language in the decree establishing procedures for the reimbursement of medical expenses to the party that incurred them, we quote that portion of the decree at length:

> IT IS ORDERED that the party who pays for a health-care expense on behalf of a child shall furnish to the other party, within thirty days of receiving them, all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses the paying party incurs on behalf of the child. IT IS FURTHER ORDERED that if the paying party furnishes all of these forms, receipts, bills, and explanations of benefits to the nonpaying party within thirty days of receiving them, the nonpaying party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expenses no later than thirty days after the nonpaying party receives the following documentation relating to the healthcare expense:
>
> a. a receipt for a prescription,

b. a receipt for a copayment for health-care services,

c. a receipt for health-care expenses of a type not covered by the health insurance plan, or

d. an explanation of benefits stating the benefits paid for all other health-care expenses.

If the paying party does not furnish to the nonpaying party all of the forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of a health-care expense the paying party incurred on behalf of the child within thirty days of receiving these documents, IT IS ORDERED that the nonpaying party shall pay his or her share of the uninsured portion of the health-care expense either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expense no later than 120 days after the nonpaying party receives the documentation listed above in this section relating to the health-care expense.

In these provisions, the decree set out two separate processes—one for when the party that incurred an expense provides certain documentation to the nonpaying party within thirty days of receiving the documentation and one for when the party fails to provide such documentation within thirty days. At trial, Lutz sought reimbursement only under the later process, asserting Smith was required to reimburse her within 120 days and failed to do so.

On appeal, Smith contends that the decree required Lutz to provide him with "all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses" and because she failed to provide him with all such documentation on each expenditure, his obligation to reimburse her for any of the expenditures never arose. Smith emphasizes the word "all" in this part of the decree and specifically maintains that because Lutz failed to provide him with any "explanations of benefits" or "EOBs," he was never required to reimburse her for

10

any expenditures. Smith also contends more generally that certain, specific documentation admitted into evidence fails to confirm payment was made, or by whom, or otherwise does not purport to be a "receipt" or "invoice."

For any incurred medical expense for which Lutz sought one-half reimbursement, Lutz only had to provide: a receipt for a prescription or copayment, a receipt for health-care expenses of a type not covered by health insurance, *or* an EOB. Some expenses—say, for a prescription—might be supportable only by a single receipt but not an explanation of benefits. Sufficient copies of receipts were admitted into evidence, coupled with inferences therefrom, to justify the court's $3,779.94 award. Among the approximately 70 pages of expense documents admitted at trial, Lutz provided many receipts and billing statements showing amounts incurred for prescriptions and copayments and at least one bill, for orthodontia, indicating there was no applicable insurance. However, because the trial court only awarded Lutz about one-fourth of the medical reimbursements for which she pleaded and there were no findings of fact signed or statements in the order indicating which expenditures were included in the amount to be reimbursed, assessing the sufficiency of the evidence to support the amount awarded is not a simple task.

Although Smith raises a few specific arguments regarding scattered pieces of evidence in the record, he does not attempt an analysis regarding the amount of expenses supported by the evidence of prescription and copayment receipts or receipts for health-care expenses of a type not covered by health insurance. We decline to undertake that analysis on his behalf. *See Woody*, 429 S.W.3d at 797 (upholding enforcement award where appellant failed to address state of the evidence regarding medical expenses as a whole but confined his challenge to a critique of certain testimony that did not render evidence insufficient).

11

The trial court did not abuse its discretion in ordering Smith to pay $3,779.94 in unreimbursed medical expenses as child support. We overrule the portions of Smith's issues challenging this award.

## II. Insurance Premiums

We next turn to Smith's contention that the trial court erred in ordering him to pay $8,704 as reimbursement for half of the insurance premiums Lutz incurred on behalf of the children from October 1, 2016 to April 1, 2018. Smith raises several arguments, including that the relevant pleadings and the enforcement order were deficient, the evidence was insufficient, and the trial court improperly either enforced the parties' MSA—which had been signed but not yet incorporated into an order of the court—or used it to modify the final decree. Concluding that the trial court's holding was not supported by pleadings or evidence, we reverse the award of reimbursement for the insurance premiums. *See* Tex. Fam. Code § 157.002 (providing that a motion for enforcement must "identify the provision of the order allegedly violated and sought to be enforced"); Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings[ and] the nature of the case proved . . . ."); *City of Keller*, 168 S.W.3d at 822, 827 (providing standards for legal sufficiency review).

We begin with the relevant language of the agreed final decree. Under the heading "Daycare," the decree provides as follows:

> It is hereby agreed that, as child support, [Smith] shall be responsible for daycare expenses for the children until the children have reached an age where daycare is no longer necessary, or the parties mutually agree otherwise. Any daycare expenses shall be paid by [Smith] directly to the daycare provider. At such time when the last child no longer requires daycare, [Smith] shall begin reimbursing [Lutz] for 50% of the cost for health insurance for the children from that month forward.

12

Although not entirely clear, this provision appears to require Smith to (1) pay daycare expenses until daycare is no longer necessary for the last child or the parties agree otherwise, and (2) begin paying half of the insurance premiums when daycare is no longer required for any of the children. Although it may have been the intention of one or both parties, the provision does not require Smith to begin paying half of the insurance premiums simply because the parties have agreed he no longer has to pay the daycare expenses.[2] The triggering event of an agreement between the parties appears to only apply to the payment of daycare expenses. The obligation to pay half of the insurance premiums is contingent only on when daycare is no longer required.

In its enforcement order, however, the trial court found "that [Smith] was on notice as to what he owed by terms and conditions of the [MSA]" and "that the [MSA] clarified that [Smith's] obligation to pay health insurance premiums begins no later than 10/1/16, which was a clarification of the parties existing contract." The MSA, which was not admitted into evidence or explicitly judicially noticed at trial but was in the court's file, provides that Smith was to "reimburse the health care premium, capped at 50% of actual cost of the premium per month, beginning 10/01/16 and each month thereafter; provided further that [Smith] has the option when it becomes available or each year during open enrollment to obtain other medical coverage." The MSA further required Lutz to provide Smith's attorney with "tangible documentation of the cost of health premium" by September 16, 2016. The MSA also had several other provisions, including on topics that were not covered in the final decree, and it expressly provided that it did not resolve the pending enforcement action. Moreover, at the time of trial on the enforcement

---

[2] There was no testimony regarding what either party thought this provision meant at the time the agreed decree was entered; however, Smith testified that he believed he did not have to pay half of the insurance premiums until the youngest child no longer needed daycare.

13

action, the MSA had not been incorporated into an order of the court and was the subject of interpretation disputes that were yet to be arbitrated.

Most importantly, the MSA did not simply clarify the final decree but included new obligations such as an obligation for Smith to begin paying half of the insurance premiums *as of a certain date*. In ordering Smith to pay unreimbursed premiums dating from October 1, 2016, the court was attempting to enforce the MSA and not the final decree. Lutz, however, did not seek enforcement of the MSA in her motion to enforce. In fact, she does not even mention the MSA in the portion of her motion requesting reimbursement of insurance premiums.[3] Instead, Lutz asserted in the motion that Smith owed such reimbursement because the children no longer needed daycare. Yet, at trial, Lutz presented no evidence regarding whether any of the children still required daycare. Any issues concerning the MSA and the insurance reimbursement obligation were certainly not tried by consent, as the MSA was not even mentioned during trial in relation to that obligation and Smith objected vociferously in his motion to modify the enforcement order in response to the trial court's suggesting in the order that the MSA had clarified the agreed final decree.

Indeed, the MSA was only mentioned twice at trial. The first time was in a question by Lutz's attorney regarding whether Smith was required to pay private school tuition. When Smith's attorney objected on relevance grounds, the trial judge asked whether the MSA had been incorporated in an order of the court. When informed that it had not, the judge sustained the relevance objection. The second time appears on the penultimate page of the trial transcript when the judge asked how the parties came to start communicating through an online resource

---

[3] Lutz mentions the MSA in her motion only in regard to Smith's failure to pay private school tuition, an issue that was barely mentioned at trial and on which the trial court did not make an award.

called Our Family Wizard, and Smith's counsel informed the judge that the parties had agreed to use the resource in mediation and had thereafter begun to do so.

In her appellate briefing, Lutz acknowledges that she did not seek enforcement of the MSA; instead, she suggests that the MSA was merely the agreement that triggered Smith's obligation to pay half of the insurance premiums. But, as explained above, the triggering event for that obligation under the decree was not an agreement between the parties but when daycare was no longer required for any of the children. Although the parties could certainly have reached an agreement as to when the children no longer needed childcare, there is no evidence that they did so, the MSA does not speak to whether the children still needed daycare, and Smith's testimony at trial implied no such agreement had occurred.

The portion of the trial court's enforcement order ordering Smith to reimburse Lutz for insurance premiums as of a certain date contained in the MSA is not supported by pleadings or evidence. Accordingly, we reverse the award of $8,704 as reimbursement for insurance premiums and order that Lutz take nothing on that claim. *See In re D.G.R.*, No. 04-05-00439-CV, 2006 WL 3611156, at *3 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (mem. op.) (holding husband was not entitled to judgment on child support arrearage where pleadings did not support theory on which such relief was based); *In re L.A.B.*, No. 12-04-00148-CV, 2005 WL 1538112, at *2–3 (Tex. App.—Tyler June 30, 2005, no pet.) (mem. op.) (reversing trial court award for unreimbursed insurance premiums because pleadings did not support the award and the issue was not tried by consent); *see also In re T.A.*, No. 02-17-00435-CV, 2019 WL 2134630, at *4 (Tex. App.—Fort Worth May 16, 2019, no pet.) (mem. op.) (reversing trial court's award of dental insurance reimbursement because there was no evidence supporting the finding that father agreed to reimburse mother for such coverage).

### III. Attorney's Fees

Smith additionally challenges the trial court's award of $7,500 in attorney's fees to Lutz for representation on the child support issues of unreimbursed medical expenses and insurance premiums. Because we reverse the trial court's award of unreimbursed insurance premiums but affirm the award of unreimbursed medical expenses, we also reverse the award of attorney's fees and remand to the trial court for a determination on fees relating solely to the award of medical expenses.

### *Conclusion*

We reverse the portion of the trial court's enforcement order that awarded Lutz $7,500 in attorney's fees for representation on the child support issues and sever and remand the question of the proper amount of those fees to the trial court. We modify the remainder of the enforcement order to remove the award of $8,704 to Lutz for reimbursement of insurance premiums under the final decree and order Lutz take nothing on those claims. We affirm the remainder of the enforcement order as so modified.[4]

/s/    Frances Bourliot
        Justice

Panel consists of Justices Jewell and Bourliot and Senior Justice Simmons.[5]

---

[4] Nothing in this opinion should be construed as holding that Lutz cannot now seek to enforce the insurance-related provisions of the MSA. This is an issue on which we take no position.

[5] Senior Justice Rebecca Simmons sitting by assignment.